## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| STEVEN P. SCHNEIDER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Docket No. 06-63-B-W |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |

### REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges that he is disabled by chronic obstructive pulmonary disease, allergies, asthma, anxiety and depression, is capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had asthma and allergic rhinitis, impairments that were severe but did not meet or equal any listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 1, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

"Listings"), Findings 3-4, Record at 22-23; that his assertions concerning his impairments and their impact on his ability to work were not entirely credible, Finding 5, *id.* at 23; that he had no exertional limitations but needed to avoid odors, dusts, fumes, gases and poor ventilation and required a sterile work environment, Finding 6, *id.*; that, given his age (31, a younger individual), education (high school), past work experience (no transferable skills) and residual functional capacity ("RFC"), a finding of not disabled was reached within the framework of Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid"), Findings 8-11, *id.*;[2] and that he therefore had not been disabled at any time through the date of decision, Finding 12, *id.*[3] The Appeals Council declined to review the decision, *id.* at 9-11, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the

---

[2] The administrative law judge stated that a finding of "disabled" was reached within the framework of the Grid. *See* Finding 11, Record at 23. That clearly was a typographical error. *See id.* at 22 (finding plaintiff not disabled).

[3] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through December 31, 2006. *See* Finding 1, Record at 22.

commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff identifies three points of error: (i) mishandling of mental impairments, (ii) reliance on assertedly flawed vocational-expert testimony and (iii) unsupported credibility assessment. *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 6).[4]  I find no reversible error.

## I.  Discussion

### A.  Mental Impairments

The administrative law judge found the plaintiff's depression and anxiety to be non-severe. *See* Record at 19 ("The evidence of record fails to support a finding that the claimant's depression, anxiety, and hypertension have resulted in more than minimal limitations in his physical or mental ability to perform basic work activities."). The plaintiff concedes that these conditions are indeed non-severe (*i.e.*, mild) but nonetheless faults the administrative law judge for not taking their impact into account in his overall RFC assessment. *See* Statement of Errors at 3. I discern no error.

An administrative law judge is obliged to consider the combined effect of non-severe as well as severe impairments. *See, e.g.*, 20 C.F.R. § 404.1545(e) ("When you have a severe impairment(s), . . . we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). As the plaintiff points out, *see* Statement of Errors at 2, a Disability Determination Services ("DDS") examining consultant, David W. Booth, Ph.D., concluded:

> In a work environment, [the plaintiff] should be able to understand information, but

---

[4] Two of the plaintiff's points of error subsume at least two discrete arguments. *See generally* Statement of Errors. Counsel is reminded to break each separate argument into a separate point of error.

> likely would have difficulty remembering what he has been told. It would be expected that he would withdraw from work requirements, as a result of physical symptoms and as a result of anxiety, and hence he would have difficulty concentrating on work tasks. [The plaintiff] should be able to respond in an appropriate way to others in a work setting.

Record at 298.

The administrative law judge did consider the Booth opinion, *see id*. at 19; however, he specifically found, on the basis of other evidence of record, that the plaintiff did not have difficulties with memory or concentration, *see id*. at 21 ("According to disability forms he is not easily distracted, and has no difficulty maintaining concentration.") (citations omitted); *see also, e.g., id*. at 124 (report of plaintiff that he had no trouble concentrating on or understanding programs watched on television and no trouble concentrating on or remembering what he read), 127 (report of plaintiff's wife that he understands questions, remembers locations, makes decisions and does not get distracted easily).[5] Inasmuch as the administrative law judge supportably discounted the symptomatology described by Dr. Booth, he did not err in failing to factor it into the plaintiff's overall RFC.[6]

## B. Reliance on Vocational Expert's Testimony

In reaching his Step 5 finding, the administrative law judge relied on the testimony of vocational expert Peter Mazzaro that a person with the plaintiff's nonexertional limitations could perform the job of electronics assembler, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 725.384-010, which is performed in a sterile environment and exists in

---

[5] Beyond this, the plaintiff's counsel agreed with the administrative law judge's statement at the second of two hearings held regarding the plaintiff's claim that, during the first hearing, the plaintiff had "testified that in terms of any mental impairments, there were no restrictions when he was compliant to medications. In terms of concentration, persistence, and pace and . . . specifically in terms of social functioning deficits, he testified that there were no problems." Record at 437.

[6] At oral argument, the plaintiff's counsel relied not only on the Booth report but also on notes by non-examining DDS consultant Brenda Sawyer, Ph.D., who had completed a Psychiatric Review Technique Form judging the plaintiff's mental impairment non-severe. *See* Record at 311. Counsel posited that these notes indicate that the plaintiff's asthma can cause anxiety and vice versa. However, inasmuch as appears, Dr. Sawyer was merely summarizing a section of the Booth report in which Dr. Booth relayed the
*(continued on next page)*

numbers of 400 in the regional economy and 250,000 in the national economy. *See id*. at 22, 416.

The plaintiff faults the administrative law judge's reliance on the Mazzaro testimony on several bases, to wit: (i) unresolved inconsistencies between that testimony and the DOT, in contravention of Social Security Ruling 00-4p ("SSR 00-4p"), (ii) lack of evidence concerning the percentage of electronics-assembler jobs entailing wearing a mask (which the plaintiff purportedly could not do), (iii) conflict between Mazzaro's testimony regarding the number of jobs available locally and statistics found in the *Occupational Employment Quarterly* for the State of Maine, (iv) failure to include, in the hypothetical question posed to Mazzaro, the plaintiff's tendency to withdraw from work due to anxiety, and (v) acknowledgement by Mazzaro that an individual who must miss work frequently because of asthma attacks cannot hold down a job unless he has an extremely sympathetic employer. *See* Statement of Errors at 3-4, 6-7. For the reasons that follow, none of these points has merit:

1. Conflict with DOT. With respect to the DOT, the plaintiff's entire argument consists of the statement: "Comparison of the VE's testimony to the Dictionary of Occupational Titles reveals serious inconsistencies." *Id*. at 3. He neglects to inform the court (or opposing counsel) what these inconsistencies might be. *See id*. The argument accordingly is deemed waived. *See, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

2. Percentage of Jobs Entailing Wearing Mask. While the plaintiff asserts in his brief, and his counsel argued at his second hearing before the administrative law judge, that he is unable to

---

plaintiff's description of the effect of his asthma on his anxiety and vice versa. *Compare id*. with *id*. at 296.

wear a mask, *see* Statement of Errors at 3-4; Record at 446, the Record is devoid of any evidence that this is so. Thus, there was no error in failing to elicit data concerning the percentage of electronics-assembler jobs performed without a mask.[7]

        3.        <u>Conflict with Plaintiff's Employment Data</u>.  The plaintiff seeks to impeach Mazzaro's testimony that there are at least 400 electronics-assembler jobs in Maine by submitting data from a publication titled *Occupational Employment Quarterly* showing that there are only 163 light, unskilled jobs in Maine falling under the heading Census Code 772, which subsumes not only the electronics-assembler job (DOT § 725.384-010, tube-assembler, electron) but also eleven other DOT-coded jobs.  *See* Statement of Errors at 4; Exhs. A & B thereto.  The *Occupational Employment Quarterly* is not listed as a reliable vocational source of which the commissioner will take administrative notice.  *See* 20 C.F.R. § 404.1566(d).  As a threshold matter, it is questionable whether a claimant represented by counsel who has not challenged a vocational expert's qualifications can seek for the first time on appeal to undermine that expert's testimony with conflicting data from a source not recognized by the commissioner as reliable.  *See, e.g., Irish v. Chater*, No. 95-315-B, 1996 WL 211797, at *6 (D.N.H. Feb. 27, 1996) ("Irish's objection to the validity of Ms. Chandick's testimony is not entirely clear, but he seems to object to her reliance on her own experience in job placement to estimate the availability of cleaner jobs in the national economy.  Irish, represented by counsel, did not object to Ms. Chandick's qualifications at the hearing.  Irish cites no requirement that a vocational expert must rely exclusively on any particular data source about the availability of jobs nor does he provide any legal authority suggesting that a vocational expert's opinion based on her

---

[7] In response to the plaintiff's counsel's argument at hearing that his client's sinus condition rendered him unable to use a mask, the administrative law judge suggested that the plaintiff's treating physician should address that issue (as well as others) in a post-hearing letter the plaintiff planned to submit.  *See* Record at 446.  The plaintiff's doctor's post-hearing letter did not address that issue.  *See id.* at 381.

experience in job placement expanded by reference to the census codes is unreliable. Further, Irish does not argue that Ms. Chandick's opinion conflicts with the job requirements in other reliable data sources.") (citations omitted).

In any event, even assuming *arguendo* that Mazzaro's data concerning numbers of locally available jobs is flawed, the plaintiff does not attack his data concerning numbers of nationally available jobs. Any error thus is harmless. *See* 20 C.F.R. § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country.").[8]

Relatedly, the plaintiff argues that "as a practical matter, little or no technology today involves cathode ray tubes, which have been replaced by LCD's since the DOT was last updated regarding this job in 1988. As a result it is likely that the number of tube assemblers is at or near zero, but again, there is no way to know." Statement of Errors at 4. At oral argument, his counsel suggested that the court could take judicial notice that the job of "tube assembler, electron" either no longer exists or does not exist in the numbers cited by the vocational expert. I decline to do so. There is no evidence of record that this job has become obsolete; nor has the plaintiff presented any evidence from which I could draw that conclusion. Further, the plaintiff, who was represented by counsel at both of his hearings, could have cross-examined Mazzaro on this very point. As his counsel conceded at oral argument, he did not do so. In the circumstances, Mazzaro's testimony stands as substantial evidence

---

[8] When questioned at oral argument whether the plaintiff's failure to challenge the vocational expert's national data rendered any error regarding the state data harmless, the plaintiff's counsel argued that (i) inasmuch as local and national statistics are gathered in the same manner, the data on national statistics would be flawed in the same way, and (ii) the vocational expert did not testify that electronics-assembler jobs exist in several regions of the country. This challenge to the vocational expert's testimony on numbers of national jobs, made for the first time at oral argument, comes too late. *See, e.g., Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

that the electronics-assembler job exists in significant numbers in the national economy.

        4.        <u>Flawed Hypothetical Question</u>.  The plaintiff's assertion that he tends to withdraw from work due to anxiety derives from Dr. Booth's findings.  *Compare* Statement of Errors at 4 *with* Record at 298.  As noted above, the administrative law judge supportably declined to factor these limitations into his RFC assessment.

        5.        <u>Necessity To Miss Work</u>.  Mazzaro confirmed, in response to a question from the administrative law judge, that a person who had occasional attacks of asthma that might put him out of commission for a couple of days or even four to eight days could perform the job of electronics assembler.  *See* Record at 424.  The administrative law judge and Mazzaro then engaged in a discussion concerning how many sick and vacation days such a person might have available to cover absences stemming from asthma attacks and how, if a person became a valued employee, allowances might be made.  *See id*. at 424-25.  Asked on cross-examination if an employer would make accommodations for a good worker, Mazzaro testified:

> Once you've been on the job and proven yourself, I think then you might be able to potentially.  I would have to say anybody with asthma attacks that are relatively frequent.  That are obviously unplanned.  That are real.  And that require infrequent hospitalization in the course of a year, would be unable to keep a job.  If they can get through six to nine months with no time off, knowing they had that problem, they might and had an understanding employer might be able to continue by saying, gee, if I call in and you know I'm going to use up all my vacation, my sick time.  I've got this problem can I use vacation.  They'll probably say, well it would be 50, 50 yes or no. . . .  I'm not going to sit here under oath and say yes an employer's gonna hire somebody that has frequent absences from work.

*Id*. at 427-28.

The plaintiff posits that (i) taking medication alone does not prevent his asthma attacks – he must also avoid certain conditions, (ii) even if he worked under ideal conditions, an asthma attack could be triggered by conditions encountered traveling to and from work or at home, and (iii) the

foregoing testimony of Mazzaro "is essentially an acknowledgement . . . that [the plaintiff] is going to have problems holding a job and may not be able to hold a job" unless "he has an extremely sympathetic employer who values him highly." Statement of Errors at 5-7.

Nonetheless, the administrative law judge based his estimate of the plaintiff's likely work absences on the plaintiff's own testimony that (i) between 2000 and the date of his first hearing, on September 7, 2004, he had been hospitalized four times for asthma attacks, once for eight days and the other times for four days, *see* Record at 411, 413, (ii) he had not been hospitalized since June 2003, *see id*. at 413-14, and (iii) his asthma medications were effectively treating his condition, *see id*. at 412-13.  Beyond this, when directly asked by the administrative law judge at his first hearing what could possibly prevent him from doing a job in a sterile environment such as the electronics-assembler job, the plaintiff responded: "Nothing."  *Id.* at 415.

While the plaintiff testified at both his first and second hearings that his asthma attacks, self-treatments and the side effects of those self-treatments collectively were debilitating on a much more frequent basis than the hospitalizations alone would suggest (as many as one to two days a week at certain times of year) and that he had brought his asthma under effective control not only by medication use but also by scrupulous avoidance of certain conditions (*e.g*., cold, pollen, stress) that would be unavoidable if he were obliged to travel to and from and engage in work on a sustained basis, *see, e.g., id*. at 418-19, 442-44, the administrative law judge expressed skepticism that the plaintiff's condition was as debilitating (and hence would result in as frequent absences) as claimed, *see, e.g., id*. at 438-40, 444-45.  For reasons discussed below, his decision not to fully credit that testimony was supportable.

### C.  Credibility Determination

As the First Circuit has noted, "The credibility determination by the ALJ, who observed the

claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

In this case, the administrative law judge did indeed support his adverse credibility finding with specific findings, stating:

> The undersigned finds that the claimant's wide-ranging activities of daily living are inconsistent with his claimed inability to work due to asthma, and further undermine his credibility. The evidence of record demonstrates that the claimant is capable of caring for his personal needs, caring for his children, cooking, cleaning, washing dishes, doing laundry, washing floors, managing money, paying bills, shopping, and doing small repairs in an independent, appropriate, and effective manner on a sustained basis. The claimant socializes with family and friends approximately twice a week, and goes out to eat at least once a month. He drives around town on a daily basis, and often gives other people rides. The evidence shows that he reads, watches television for approximately three to four hours a day, plays cards, goes canoeing, hunts, fishes, goes for walks, and plays horseshoes.

*Id*. at 21 (citations omitted).

The plaintiff does not dispute the finding that he engaged in the activities described above; rather, he suggests that as a matter of both fact and law, those activities were not incompatible with an inability to work. *See* Statement of Errors at 7. He suggests that because he is not working, he is able to tailor his lifestyle to help manage his asthma, ceasing activities or refraining from undertaking them as need be. *See id*. He points out that a full-time worker does not have this luxury and, hence, as recognized by the United States Court of Appeals for the Seventh Circuit, ability to engage in child care and household chores does not necessarily translate into ability to hold a full-time job. *See id*.; *see also, e.g., Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment as well, often differ dramatically

between home and office or factory or other place of paid work.") (citations omitted).

The plaintiff does not cite, nor does my research reveal, caselaw indicating that the First Circuit has adopted the view of the Seventh Circuit with respect to activities of daily living. Rather, as noted above, the First Circuit has instructed that the credibility determination of an administrative law judge is to be afforded deference, particularly when supported (as is this one) by specific findings (including findings of performance of activities of daily living seemingly inconsistent with the level of restriction claimed). *See, e.g., Baez Velez v. Secretary of Health & Human Servs.*, No. 92-2438, 1993 WL 177139, at *6 (1st Cir. May 27, 1993) ("The ALJ specifically found that claimant's allegations of severe and disabling pain were not credible. This credibility determination, especially when supported by specific findings, is entitled to deference. In addition to the lack of supportive objective medical evidence, the ALJ also found that the allegations were unsupported by claimant's 'conservative treatment, his demeanor, his daily activities, and other evidence of record.'").

In this case, the administrative law judge supportably viewed the totality of the plaintiff's activities – which, as counsel for the commissioner underscored at oral argument, included driving around town every day and frequently giving others rides – as inconsistent with his claim of being functionally incapacitated as many as one to two days a week certain times of year. There thus is no basis upon which to disturb his credibility assessment.[9]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

---

[9] The plaintiff also specifically faults the administrative law judge's discounting of his testimony that he is shaky for some time after taking Albuterol, asserting that this adverse finding was predicated on a misconstruction of the hearing testimony. *See* Statement of Errors at 8-9; *see also* Record at 413, 420-21. Nonetheless, even assuming *arguendo* that the administrative law judge wrongly judged the plaintiff to have given inconsistent testimony regarding the effect of Albuterol, *see* Record at 420-21, he based his adverse credibility finding not only on the perceived testimonial inconsistency but also on inconsistency between the claimed side effects of Albuterol and the plaintiff's wide range of activities of daily living, *see id*. at 421-22.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of December, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge